**FILED**

**JAN 11 2013**

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **618-806-4612** | Case No. 13-mj-3005-DGW<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Neal Rohlfing, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **618-806-4612** (the "**TARGET TELEPHONE**"), whose service provider is *AT&T*, a wireless telephone service provider headquartered at AT&T Mobility Headquarters, 208 South Akard Street, Dallas, Texas. The **TARGET TELEPHONE** has no subscriber information, but is being utilized by Deborah PERKINS. The **TARGET TELEPHONE** is further described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Neal Rohlfing, being duly sworn, deposes and states: I am a Task Force Officer with the Drug Enforcement Administration (DEA) of the United States Department of Justice, and have been so employed for approximately 3 years. Previously, I was employed as an Investigator with Saint Clair County Drug Tactical Unit and have been a Fairview Heights Police Officer for 11 years. I have participated in numerous narcotics investigations involving the transportation of controlled substances and/or of the proceeds/payments from controlled substance sales throughout the United States during my time with DEA. I have received extensive training by the DEA. I have participated in numerous drug investigations, which

have resulted in the seizure of methamphetamine, crystal methamphetamine, ecstasy, cocaine, marijuana, and other controlled substances. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, Confidential Sources (referred to as CS's), and Sources of Information (referred to as SOI's). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841 have been committed, are being committed, and will be committed by the user of the **TARGET TELEPHONE**, and other known and unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

### PROBABLE CAUSE

5. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by Deborah PERKINS. Further, there is probable cause to believe the user of the **TARGET TELEPHONE** is involved in the distribution of heroin in violation of Title 21, United States Code, Section 841(a)(1).

## BACKGROUND OF INVESTIGATION

6. Members of the investigative team and I are investigating Deborah PERKINS for violations of Title 21, United States Code, Section 841(a)(1). The investigation has shown that Deborah PERKINS uses the **TARGET TELEPHONE**.

7. Your affiant further states that there is probable cause to believe that signaling information, including cell site information, precision location information, and factory installed GPS information will lead to evidence of the aforementioned criminal offenses, the location of Deborah PERKINS as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

8. This application is submitted in connection with a heroin trafficking organization targeting Deborah PERKINS, a heroin trafficker based in the Fairview Heights, Illinois area. Based on information provided by a confidential source, agents believe Deborah PERKINS to be a heroin trafficker in the Fairview Heights, Illinois area. It is further believed that PERKINS is ultimately obtaining heroin from a Chicago, Illinois source of supply capable of providing kilogram quantities of heroin.

9. On January 18, 2011, Agents with the Metropolitan Enforcement Group of Southern Illinois utilized Confidential Informant #1 who has been reliable and corroborated to purchase heroin from Harold Gardner. The Confidential Informant introduced an Undercover Agent with MEGSI who also purchased heroin from Gardner. On that date, Agents observed Gardner leave the meet location and respond to 20 Kassing Drive, Fairview Heights, Illinois where it is expected Gardner retrieved heroin to complete the transaction. Deborah PERKINS owns and resides at 20 Kassing Drive, Fairview Heights, Illinois. Gardner resided at the residence at that time also.

10. Agents with the Metropolitan Enforcement Group of Southern Illinois conducted five additional undercover agent purchases of heroin from Gardner in the Caseyville, Illinois area between January 18, 2011, and March 24, 2011. On two of the undercover purchases Gardner was observed by agents leaving 20 Kassing Drive, Fairview Heights, Illinois.

11. On June 23, 2011, Harold Gardner was indicted in the Southern District of Illinois for distribution of heroin. On March 15, 2012, Gardner was arrested. According to CS#2 (See paragraph 12) Deborah PERKINS continued to travel to Chicago, Illinois to purchase heroin and sell heroin in Fairview Heights, Illinois, area after Gardner's arrest.

12. On June 26, 2012, TFO Neal Rohlfing and TFO Lee Rinehart met a confidential source (CS #2), concerning the narcotic related activities of Deborah PERKINS. It should be noted, CS#2 has been found to be reliable, and his/her information has been corroborated. CS#2 provided information about other subjects involved in drug trafficking which has been found to be accurate by the Drug Enforcement Administration.

13. According to CS#2, PERKINS is running a heroin trafficking organization based in Fairview Heights, Illinois where she resides. CS#2 has known PERKINS for 24 years. CS#2 told agents PERKINS is selling gram quantities of heroin but is capable of selling ounce quantities of heroin. CS#2 said PERKINS is selling high quality heroin for approximately $2,500.00 per quarter ounce and approximately $110 per gram. CS#2 told agents he/she purchased heroin from PERKINS over the past nine weeks. CS#2 stated he/she was trusted by PERKINS and has been inside her residence at 20 Kassing Drive, Fairview Heights, Illinois on numerous occasions. CS#2 stated he/she has seen multi-ounce quantities of heroin inside the residence. CS#2 stated Deborah PERKINS goes to Chicago, Illinois to purchase heroin. CS#2

stated PERKINS rides the Mega bus to Chicago, Illinois to purchase heroin. CS#2 stated PERKINS asked him/her in the past month to go with her to Chicago, Illinois to purchase heroin.

14. On June 27, 2012, TFO Neal Rohlfing, TFO Ben Callahan and TFO Lee Rinehart met with CS#2 concerning the narcotic related activities of Deborah PERKINS. Agents observed CS#2 call PERKINS at (TARGET CELLULAR TELEPHONE). PERKINS answered the call and spoke to CS#2. CS#2 informed PERKINS he/she was suffering and needed to meet with her. PERKINS informed CS#2 to call before he/she came over. CS#2 informed TFO Rohlfing and TFO Callahan that telling PERKINS he was suffering was code for that he needed more heroin. I recognized the voice to be that of PERKINS due to past encounters and discussions.

15. On July 3, 2012, TFO Neal Rohlfing, TFO Ben Callahan and TFO Benjamin Callahan met with CS#2 concerning the narcotic related activities of Deborah PERKINS and to make a recorded telephone call to PERKINS. Agents observed CS#2 call PERKINS at (TARGET CELLULAR TELEPHONE). PERKINS answered the call and spoke to CS#2. CS#2 informed PERKINS he/she needed to meet with her. PERKINS informed CS#2 she was not home but would call him/her when she was. I recognized the voice to be that of PERKINS due to past encounters and discussions.

16. On July 3, 2012, agents directed CS#2 to attempt a controlled purchase from PERKINS at 20 Kassing Drive, Fairview Heights, Illinois. CS#2 responded to PERKINS residence and attempted to purchase heroin but PERKINS did not have any more for sale. PERKINS informed CS#2 she would be leaving the area to obtain more heroin in the next couple of days. CS#2 understood this as PERKINS would be going to Chicago, Illinois to purchase

heroin. This meeting was recorded and CS#2's arrival and departure from PERKINS residence was observed by agents.

17.  During surveillance when agents observed CS#2 leave PERKINS residence agents also observed an unknown female leave the residence. A traffic stop was conducted on the unknown female in Belleville, Illinois. The female informed agents she had just left her friend Deborah PERKINS house in Fairview Heights. The female informed agents they should know PERKINS because she sells heroin.

18.  On January 9, 2013, Investigator Aaron Nyman and TFO Neal Rohlfing met a confidential source (CS #3), concerning the narcotic related activities of Deborah PERKINS. It should be noted, CS#3 has been found to be reliable, and his/her information has been corroborated. CS#3 provided information about other subjects involved in drug trafficking which has been found to be accurate by the Drug Enforcement Administration. CS #3 informed agents that Deborah PERKINS currently is utilizing TARGET CELLULAR TELEPHONE to conducted heroin transactions. CS#3 advised he/she contacts PERKINS at TARGET CELLULAR TELEPHONE.

19.  CS #3 informed agents that he/she has known Deborah PERKINS and Doug Oliver for approximately 15 years. CS #3 advised that Deborah PERKINS and Doug Oliver have been selling heroin throughout the time he/she has known them. CS #3 advised he/she has seen large quantities of heroin at their residence located at 20 Kassing Drive, Fairview Heights, Illinois. CS#3 stated Deborah PERKINS goes to Chicago, Illinois to purchase heroin. CS#3 stated PERKINS rides the Mega bus to Chicago, Illinois to purchase heroin. CS#3 stated PERKINS asked him/her in the past to go with her to Chicago, Illinois to purchase heroin. CS

#3 stated he/she has picked up PERKINS from the Mega Bus station in Saint Louis, Missouri after she has returned from Chicago, Illinois with heroin.

20. CS #3 informed agents that he/she since September 2012, to the present time he/she has assisted Deborah PERKINS and her son Doug Oliver in distributing gram quantities of heroin. CS #3 stated he/she would receive a telephone call or text from Doug Oliver to in order to coordinate heroin sales to some of Deborah PERKINS and Doug Oliver's customers. CS #3 stated he/she would get 3-5 grams of heroin at a time from Deborah PERKINS and Doug Oliver when he/she would make heroin sales for them. CS #3 stated he/she has sold approximately 180 grams of heroin for Deborah PERKINS and Doug Oliver over the past three months.

21. On January 11, 2013, Investigator Aaron Nyman and Investigator Chris Lutz met with CS #3. CS #3 advised Deborah PERKINS unknown Source of Supply of heroin was in Saint Louis, Missouri purchasing a large amount of cigarettes to take back to Chicago, Illinois to sell. CS #3 informed agents that Deborah PERKINS informed him/her that she was going to ride back to Chicago, Illinois with her Source of Supply to purchase a large amount of heroin. CS #3 stated PERKINS informed him/her she was going to take the Mega Bus back from Chicago, Illinois. CS #3 stated he/she met with PERKINS and Doug Oliver today at 20 Kassing, Fairview Heights, Illinois and observed them to have several grams of heroin at the residence.

22. It is anticipated Deborah PERKINS will use the **TARGET CELLULAR TELEPHONE** to further the violations of Title 21, United States Code, Section 841(a)(1).

23.     In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

24.     Based on my training and experience, I know that **AT&T** can collect E-911 Phase II data about the location of the **TARGET TELEPHONE**, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on **AT&T's** network or with such other reference points as may be reasonably available.

25.     Based on my training and experience, I know that **AT&T** can collect cell- site data about the **TARGET TELEPHONE.**

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

28. I further request that the Court direct *AT&T* to disclose to the government any information described in Attachment B that is within the possession, custody, or control of *AT&T*. I also request that the Court direct *AT&T* to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with *AT&T's* services, including by initiating a signal to determine the location of the **TARGET**

**TELEPHONE** on *AT&T's* network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate *AT&T* for reasonable expenses incurred in furnishing such facilities or assistance.

29.   I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

30.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
NEAL ROHLFING
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on January __, 2013.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **618-806-4612,** (the **"TARGET TELEPHONE"),** whose wireless service provider is *AT&T* a company headquartered at **AT&T Mobility Headquarters, 208 South Akard Street, Dallas, Texas.** The **TARGET TELEPHONE** has no subscriber information but is being utilized by Deborah PERKINS.

2. Information about the location of the **TARGET TELEPHONE** that is within the possession, custody, or control of *AT&T,* including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **TARGET TELEPHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **TARGET TELEPHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of *AT&T*, *AT&T* is required to disclose the Location Information to the government. In addition, *AT&T* must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with *AT&T's* services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on *AT&T's* network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate *AT&T* for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).